**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

_____
                                            :
Christine Elick                             :Case No. 2:08-CV-001 700ANB
                                            :
              Plaintiff      :
          v.                      :The Honorable Alan N. Bloch
                                            :
Ford Motor Company                          :
                                            :
              Defendant.     :
_____:

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT FORD MOTOR COMPANY'S MOTION *IN LIMINE* NO. 6
TO PRECLUDE TESTIMONY OF ALLAN J. KAM**

**I.     INTRODUCTION**

      Plaintiff has produced the report of Allan J. Kam, former attorney for the National Highway Traffic Safety Administration (NHTSA), who offers opinions on everything from select NHTSA employees' positions on various proposals, to the "very limited resources" of certain NHTSA offices, to "secret meetings" between Ford and President Richard Nixon in 1971—none of which is relevant to this case. Mr. Kam's report simply regurgitates the findings and opinions of other individuals (none of whom will testify at trial), in an attempt to suggest NHTSA's motivation for taking or not taking a certain action. In short, Mr. Kam intends to inject improperly into the record his own subjective, and highly editorial, slant on NHTSA's internal operations and Ford's role in creating Federal Motor Vehicle Safety Standards (FMVSS).

      While Mr. Kam arguably may be qualified to provide a general background of NHTSA and its rulemaking processes—if the Court deems that information relevant and admissible—he should be precluded from offering any testimony at trial regarding: (a)

speculation about the reasons for NHTSA's issuance or non-issuance of regulations, including but not limited to FMVSS 216; (b) interpretation of FMVSS; (c) Ford and other automobile manufacturers' comments to proposed rulemaking; and (d) various petitions, investigations, and internal NHTSA Memoranda regarding proposed rulemaking. Such testimony should be precluded as outside the permissible scope of expert testimony, hearsay falling outside any exception, and unsupported speculation.

## II. STATEMENT OF THE CASE

This case arises from a motor vehicle accident that occurred on January 4, 2007, on northbound State Road 4008 (Slippery Rock Road), in Butler County, Pennsylvania. Erica Fajohn was operating her 1994 Ford Explorer, in which Plaintiff, Christine Elick, was the front seat passenger, when the right wheels of the vehicle left the roadway. The driver then steered left, overcorrecting to return to the pavement, and then overcorrected by steering to the right, causing the vehicle to rollover with the driver's side leading. The vehicle rolled four times, landing on its tires partially off the roadway.

Both the driver and passenger sustained injuries in the accident, rendering Plaintiff a quadriplegic. Plaintiff brought suit against Ford, alleging causes of action in strict liability and negligence. Specifically, Plaintiff claims that the subject 1994 Explorer was not crashworthy due to defects in its roof and passenger restraint system.

## III. ARGUMENT

In his August 25, 2009, report, Plaintiff's liability expert, Allan J. Kam, sets forth the follow summary and observations:

> FMVSSs are only minimum standards covering a limited number of aspects of performance. That a vehicle complied with FMVSSs when it was manufactured does not mean that it is "safe" under all circumstances, that its design represented the state-of-the-art at the time, or that the

manufacturer is relieved of its responsibility to design a safe product. NHTSA does not approve or certify the safety of vehicles. NHTSA has asked manufacturers to do more than merely meet the minimum "floor" required in the agency's standards.

There was no FMVSS on rollover resistance applicable to the MY 1994 Ford Explorer, and the industry had generally opposed agency proposals for a rollover resistance FMVSS. Congress has mandated certain actions by NHTSA concerning rollovers, such as dynamic testing for rollovers for a consumer information program, required by the TREAD Act. More recently, in 2005 SAFETEA-LU legislation, Congress required NHTSA to, among other things, establish performance criteria to reduce the occurrence of rollovers consistent with stability enhancing technologies, and in 2007 NHTSA issued a Standard on electronic stability control.

FMVSS 216, Roof Crush Resistance, was issued in 1971 as a final rule for passenger cars, and extended to light trucks in 1991. NHTSA has evaluated FMVSS 216, and found that it has had little or no effect on fatality reduction in vehicles with B-pillars. Agency spokespersons stated that the current standard -- which is basically the same requirements for MY 2009 and 2010 vehicles as were in effect for the MY 1994 Ford Explorer -- needed to be upgraded.

NHTSA proposed an upgraded FMVSS 216 in late August 2005, shortly after Congress enacted the SAFETEA-LU legislation, which directs the agency to "initiate rulemaking proceedings, for the purpose of establishing rules or standards that will reduce vehicle rollover crashes and mitigate deaths and injuries associated with such crashes for motor vehicles." Further, SAFETEA-LU requires that one of these rulemakings "shall be to establish performance criteria to upgrade Federal Motor Vehicle Safety Standards No. 216," and that a proposed rule must be issued by the end of 2005, and a final rule by July 1, 2008. In its August 2005 NPRM, the agency noted its belief that there is a relationship between the amount of roof intrusion and the risk of injury to belted occupants in rollover events. NHTSA also stated that its belief that FMVSS 216 could protect front seat occupants better if the Standard's applied force requirement reduced the extent of roof crush occurring in real world crashes. In its January 2008 SNPRM, the agency noted that there is a statistically significant relationship between roof intrusion and injury for belted occupants. NHTSA finally issued an upgraded FMVSS 216 in May 2009, with the new requirements being phased in starting in MY 2013.

NHTSA issued the FMVSS 208 dolly rollover test over 35 years ago, and it has remained "on the books" as an optional means of

>compliance with FMVSS 208, and as an alternative to compliance with FMVSS 216. However, to the best of my knowledge, no manufacturer has elected to comply with the dolly rollover test in lieu of compliance with Standard 216.

(Kam Report dated Aug. 25, 2009 at 69-70 (Ex. "A") (internal citations omitted).)

As set forth below, Mr. Kam should be precluded from testifying regarding: (a) speculation about the reasons for NHTSA's issuance or non-issuance of regulations, including but not limited to FMVSS 216; (b) interpretation of FMVSS; (c) Ford and other automobile manufacturers' comments to proposed rulemaking; and (d) various petitions, investigations, and internal NHTSA memoranda regarding proposed rulemaking.

### A. MR. KAM SHOULD BE PRECLUDED FROM SPECULATING ABOUT OR INTERPRETING FMVSS OR THE REASONS FOR NHTSA'S ISSUANCE OR NON-ISSUANCE OF REGULATIONS

Mr. Kam is not an engineer, nor does he possess any specialized knowledge as to the design and engineering aspects of the FMVSS. Rather, he is a former attorney for NHTSA, having retired from that position in April of 2000. (Ex. A, Kam Report, at 2). He concedes in his report that the conclusions and opinions in his report are his own, and he does not purport to speak for NHTSA. (Ex. A, Kam Report, at 2). Nevertheless, Mr. Kam's report contains considerable commentary on NHTSA's reasons for taking certain action and/or refraining from certain action with regard to issuing or amending regulations. For instance, he states that the "Alliance of Automobile Manufacturers . . . representing 13 automakers, including Ford, urged NHTSA to withdraw its tentative plans" for "rollover risk" ratings. (Ex. A, Kam Report, at 34). He further suggests that, but for "adamant industry opposition," NHTSA would have issued FMVSS on "rollover resistance" "well before 1994." (Ex. A, Kam Report, at 23). He also implies that NHTSA was either ineffective at regulating, or hindered by the auto industry, in that

Congress "directed NHTSA to take certain rulemaking actions" because it was "[n]ot satisfied with the pace of NHTSA rulemaking." (Ex. A, Kam Report at 59). Indeed, he engages in this improper speculation and interpretation of NHTSA decisions throughout his 70-page report.

Mr. Kam's opinions lack any basis in fact, and they should be precluded as mere speculation and baseless conjecture at the reasons for NHTSA's issuance or non-issuance of rulemaking proposals. NHTSA is not a defendant in this case, and no NHTSA representative will be present at trial to confirm or refute Mr. Kam's presumptions. As Mr. Kam has conceded he does not speak for NHTSA, his personal positions are irrelevant to the rulemaking actions that NHTSA ultimately did or did not take.

Even if this Court determines that Mr. Kam might have a basis for his opinion, his opinion is an impermissible interpretation of a legal standard. "It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 509-10 (2d Cir. 1977); A.E. v. Independent School Dist., 936 F.2d 472, 476 (10th Cir.1991) (an expert may not opine to legal conclusions drawn by applying the law to the facts); Arnold v. County of Nassau, 252 F.3d 599, 602 (2d Cir. 2001) ("where . . . 'a decision turns on the meaning of a word in a statute or regulation, the decision is one of law which must be made by the court.'"); DePaepe v. General Motors Corp., 141 F.3d 715, 717-18 (7th Cir. 1998) (the meaning and applicability of a design standard is a question for the court); Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Plan and Trust Agreement, 812 F. Supp. 1376, 1378-79 (E.D. Pa.1992) (an expert cannot be allowed to give an opinion on a question of law); Nemir v. Mitsubishi Motors Corp., 200 F. Supp. 2d 770, 776 (E.D. Mich. 2002)

(the court "must interpret federal regulations as a matter of law."); CSX Transp., Inc. v. City of Plymouth, 92 F. Supp. 2d 643, 656 (E.D. Mich. 2000) (same); Contini v. Hyundai Motor Co., 876 F. Supp. 540, 542-43 (S.D.N.Y. 1995) (an expert can neither testify as to the meaning of a standard nor as to whether the defendant complied with or violated the standard).

Moreover, because Mr. Kam left NHTSA in 2000, he did not participate in the creation of FMVSS 216, proposed rulemaking on FMVSS 216, or any amendments to that standard. Therefore, any opinions he could offer relating to FMVSS 216 would not be based on Mr. Kam's personal knowledge, but rather, would be purely legal conclusions. Indeed, Mr. Kam concedes he was not involved in FMVSS 216:

> Q.  Now, if I understand correctly, you were not involved in the promulgation of FMVSS 216?
>
> A.  That's correct.
>
> Q.  And you were not involved in the version of FMVSS 216 that led to that standard being applied to light trucks and SUVs?
>
> A.  I wasn't involved in the rule-making proceeding that resulted in the extension to light trucks. As I said, I did serve on an enforceability task force that made various recommendations, but the specific rule-making proceeding that resulted in the extension of 216 to light trucks was not one that I personally worked on.

(Testimony of Allan Kam, Duncan v. Ford Motor Company, No. 01-7230-CA, Div. CV-F (4th Judicial Cir. of FL, Duval Cty.) (March 3, 2005), at 838:4-16, hereto attached as Exhibit B). Therefore, even aside from Mr. Kam's improper commentary as to the propriety of NHTSA's rulemaking decisions, any testimony he may proffer as to the

rulemaking process behind the 2009 amendment to FMVSS 216 would be entirely speculative.[1]

Indeed, courts have precluded Mr. Kam from offering his opinions on NHTSA investigations and compliance with regulations.  See Gibson v. Chrysler Corp., 2004 WL 1918725, *15-19 (App. Ct. Tenn., Aug. 26, 2004) (hereto attached as Exhibit C):

> [I]t is clear from the record that Mr. Kam was not qualified to render an opinion as to whether Chrysler violated any NHTSA regulation. That decision was within the purview of NHTSA. NHTSA's decision not to pursue sanctions against Chrysler following its recall indicates that the agency was satisfied that the regulations were not violated. Mr. Kam's testimony would only have usurped NHTSA's decision that Chrysler had not violated the regulations.

Id. at *18 (affirming exclusion of Mr. Kam's opinion that Chrysler should have issued recall earlier).

Likewise, in this case, Mr. Kam cannot offer his own interpretations of NHTSA's decisions, nor can he interpret the applicability or compliance with any particular FMVSS.  He should be precluded from testifying about his interpretation of various FMVSS and the adequacy thereof because he does not speak for NHTSA, and an expert is not permitted to provide an opinion interpreting a legal standard.  Accordingly, Mr. Kam should be precluded from testifying about his interpretation of FMVSS, NHTSA action or inaction, and the adequacy thereof.

    **B.**    **MR. KAM SHOULD BE PRECLUDED FROM TESTIFYING AS TO VARIOUS PETITIONS, INVESTIGATIONS, INTERNAL NHTSA MEMORANDA, AND FORD'S RESPONSES OR COMMENTS REGARDING PROPOSED RULEMAKING**

---

[1] Ford also has filed a separate Motion *in Limine* to Preclude Reference to the 2009 Amendments to FMVSS 216 or Related Notices of Proposed Rulemaking, which it hereby incorporates by reference as though set forth in full herein.

Throughout his report, Mr. Kam purports to relay what he considers "[s]ignificant [e]vents in NHTSA's [c]onsideration of [r]ollover [r]esistance [r]ulemaking." (Ex. A, Kam Report, at 23; see generally id. at 23-39). Mr. Kam's sole purpose for offering these "opinions" is to create the incorrect impression that NHTSA was "in favor" of granting various petitions or pursuing various investigations, but Ford (along with the rest of the auto industry) kept NHTSA from doing so. In addition to all of the reasons stated in Part I, supra, such evidence is inadmissible because: (1) is not relevant to any issue in this case and, even if it were somehow marginally relevant, such relevance is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury; and (2) it is inadmissible hearsay.

### 1. Internal Agency Memoranda and Other Evidence Reflecting Particular Views Are Irrelevant and Unduly Prejudicial

Evidence relating to various petitions and internal NHTSA investigations is wholly irrelevant to the issues in this litigation. The fact that individuals within NHTSA may have supported various petitions and investigations is simply not relevant to any issue. Indeed, NHTSA's final agency action with respect to the Wirth Petition and Samarai Petitions cited by Mr. Kam was a denial of both. Additionally, the Bronco II investigation cited by Mr. Kam was closed by NHTSA with no finding of defect. Whether certain individuals within NHTSA may have supported the petitions and investigations has no bearing on Plaintiff's alleged defects in the 1994 Ford Explorer.

Moreover, the petitions, investigations, and internal NHTSA memoranda cited by Mr. Kam are too remote in time to be relevant. For example, NHTSA denied the Wirth Petition 19 years before the accident in this case. It denied the Samurai Petitions

mentioned by Mr. Kam around the same time.  NHTSA closed its Bronco II investigation referenced by Mr. Kam without a finding of defect 16 years before this accident.  Courts have routinely held that evidence that is too remote in time is irrelevant and should be excluded.  For example, the Eighth Circuit in <u>Gulbranson v. Duluth Missabe & Iron Range Ry. Co.</u>, 921 F.2d 139 (8th Cir. 1990), held that the minutes of a railroad safety committee meeting that took place eight to nine months after the accident underlying the lawsuit were irrelevant and inadmissible.  The Court explained that "[h]ere, the minutes have no tendency to make the existence of any fact that is of consequence more or less probable because the evidence is too remote in time from the date of the accident."  <u>Id.</u> at 142.

Similarly, the court in <u>Burns v. Pepsi-Cola Metropolitan Bottling Co.</u>, 510 A.2d 810 (Pa. Super. 1986), in considering a consortium claim asserted by the wife of an injured man, upheld the trial court's ruling that the wife's alleged extra-marital affair that occurred three years prior to her husband's injury "was irrelevant as too remote in time to [her husband's] injury to possibly prove that marital problems existed immediately before the glass ingestion incident."  <u>Id.</u> at 812.  See also <u>Rocky Mtn. Helicopters v. Bell Hellicopters Textron</u>, 805 F.2d 907, 916 (10th Cir. 1986) (trial court properly excluded evidence of a witness as to the plaintiff's competence to fly a helicopter based on observations five months before the accident because it was too remote to be relevant and because of the "potential prejudicial effect such evidence might have.").

In this case, these petitions and investigations regarding rollover resistance are simply irrelevant to any issue of consequence, such as whether the 1994 Ford Explorer's roof strength and/or restraint system proximately caused Plaintiff's injuries.

Additionally, the fact that individuals within NHTSA may have supported any of these petitions or investigations is likewise irrelevant. Plaintiff has retained expert witnesses who will testify on these technical design issues, if they pass the hurdles of admissibility, and individuals who may have agreed with the referenced petitions or investigations have no bearing to any issue in this case.

Finally, evidence relating to these petitions, investigations, and internal NHTSA memoranda should also be excluded because any marginal probative value it may have is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury. Introduction of or reference to this evidence would be unduly prejudicial to Ford because the jury would be completely confused and misled as to how opinions of individuals within a federal administrative agency have any bearing on the design features of this vehicle, particularly when those individual's views were ultimately rejected.

This is true with even greater force for any past comments or responses by Ford, to NHTSA or others, for instance in response to NHTSA's notice(s) of proposed rulemaking for various FMVSS. Mr. Kam simply seeks to take Ford's statements (some dating back to the 1970s) out of context and interpret them by adding his own "spin." Ford will have its own experts and representatives testifying at trial, who will be able to testify as to the relevant design issues **pertaining to the subject 1994 Explorer**. Ford's position on various rulemaking or NHTSA investigations does not change the fact that the subject vehicle complied with all applicable federal standards when it was manufactured. Accordingly, any comments by Ford on federal standards or rulemaking have no bearing on the design and manufacture of the subject vehicle.

Moreover, if Mr. Kam is permitted to recount select excerpts of statements by Ford employees, the Court will need to provide Ford with an opportunity to introduce evidence of the full statements and/or the circumstances surrounding each statement Mr. Kam may introduce. The result would be a trial on numerous collateral issues—some of which may date back 40 years—that have no bearing on this case. Not only would such issues confuse the jury with huge amounts of extraneous technical information in an already complex case, but the additional time required to address each and every comment would considerably lengthen the trial, amounting to a waste of the Court's time and resources.

### 2. Internal Agency Memoranda and Other Evidence Reflecting Individual's Views Are Inadmissible Hearsay

Even if this Court somehow finds evidence regarding these petitions, investigations, and internal NHTSA memoranda relevant, it is inadmissible hearsay. Unless it falls within a specific exception, hearsay is inadmissible at trial. FED. R. EVID. 802. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Internal agency memoranda and other evidence reflecting individual employees' views are out of court statements offered for the truth of their conclusions. Moreover, memoranda or correspondence indicating that certain NHTSA employees were "in favor" of granting various petitions do not fall within Rule 803(8)(C)'s exception for public records, because their interim nature and reliance on multiple layers of hearsay indicate a lack of trustworthiness.

While Rule 803(8)(C) provides a hearsay exception for public records and reports of "factual findings resulting from an investigation made pursuant to authority granted by law," that exception depends upon the trustworthiness of the circumstances and sources of information. FED. R. EVID. 803(8)(C). In this case, internal memoranda by NHTSA employees do not constitute factual findings of the agency—rather, they are merely the opinions of various NHTSA employees. Case law is directly on point. In Smith v. Isuzu Motors Ltd., 137 F.3d 859 (5th Cir. 1998), cert. denied, 525 U.S. 1142 (1999), the plaintiffs' decedent was killed in a single-vehicle rollover accident. At trial, plaintiffs sought to present internal memoranda that certain individuals at NHTSA sought to grant the Wirth Petition (one of the petitions referenced by Mr. Kam). The trial court precluded the evidence, finding that the memoranda did not reflect "factual findings" of the NHTSA. Id. at 862. The trial court held that "they embody the positions and opinions of individual staff members, which the agency ultimately declined to accept." Id. The jury found for the defendants and plaintiffs appealed.

Plaintiffs appealed and argued, among other things, that the trial court erred in excluding evidence relating to the Wirth Petition. The Fifth Circuit disagreed and affirmed, holding:

> We further conclude that the memoranda do not satisfy Rule 803(8)(C). The memoranda do not reflect "factual findings" of the NHTSA. Rather, they embody the **positions and opinions of individual staff members, which the agency ultimately declined to accept**. Our conclusion is in accord with other circuits that have held that interim agency reports or preliminary memoranda do not satisfy Rule 803(8)(C)'s requirements. The cases relied upon by Smith are inapposite.
>
> For these reasons, we conclude that the district court in this case acted within its discretion in excluding the NHTSA internal memoranda on hearsay grounds.

137 F.3d at 862-63 (certain citations omitted) (emphasis added).

Other Courts are in agreement that interim agency reports or preliminary memoranda do not satisfy Rule 803(8)(C)'s requirements because they do not reflect factual findings, but rather opinions. See Figures v. Board of Pub. Util., 967 F.2d 357, 360 (10th Cir. 1992) (holding that a draft of a proposed letter from an area director of a government agency to a municipal administrative agency was properly excluded because it did not represent an agency finding); United States v. Gray, 852 F.2d 136, 139 (4th Cir.1988) (holding that the district court properly refused to admit a tentative internal IRS referral report because it did not contain "agency factual findings"); City of New York v. Pullman, Inc., 662 F.2d 910 (2d Cir.1981) (holding that an interim recommendation by a transit authority staff member to the transit authority administrator was not a factual finding of an agency).

Further, the interim nature of this type of evidence renders it untrustworthy. See, e.g., United Air Lines, Inc. v. Austin Travel Corp., 867 F.2d 737, 743 (2d Cir.1989) (concluding that the district court did not abuse its discretion in excluding government reports that the district court concluded were untrustworthy because of the "interim or inconclusive nature of the reports"). If the jury hears statements contained in interim memoranda, it will have no way of knowing whether the author conducted further investigation or research, followed up with other individuals or departments, or abandoned the author's initial position altogether.

Memoranda prepared by individuals working for NHTSA indicating that they were "in favor" of granting the referenced petitions and pursuing the referenced

investigations do not fall into the categories of admissible evidence under F.R.E. 803(8)(C) and should be precluded as inadmissible hearsay.

## CONCLUSION

For all of the reasons set forth above, Defendant Ford Motor Company request that this Court enter an Order precluding Plaintiffs' expert Allan J. Kam from testifying regarding: (a) speculation about the reasons for NHTSA's issuance or non-issuance of regulations; (b) interpretation of FMVSS; (c) Ford and other automobile manufacturers' comments to proposed rulemaking; and (d) various petitions, investigations, and internal NHTSA memoranda regarding proposed rulemaking.

Respectfully submitted,

**DICKIE, McCAMEY & CHILCOTE, P.C.**

By: ____/s/ Nancy R. Winschel, Esquire_____
    Nancy R. Winschel, Esquire
    Pa. I.D. #34617
    Dickie, McCamey & Chilcote, P.C.
    Two PPG Place, Suite 400
    Pittsburgh, PA 15222-5402
    (412) 392-5307
    (412) 392-5367 (fax)
    Email: nwinschel@dmclaw.com
    *Attorneys for Defendant*
    *Ford Motor Company*

        **CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.**

        Tiffany M. Alexander, Esquire
        Campbell Campbell Edwards & Conroy, P.C.
        Chester Corporate Center
        690 Lee Road, Suite 300
        Wayne, PA 19087
        (610) 964-1900
        (610) 964-1981 (fax)
        Email: talexander@campbell-trial-lawyers.com

        *Attorneys for Defendant*
        *Ford Motor Company*

Dated:  May 14, 2010