```
                           1-23-07   A503395                    1

1 | TRAN
    CASE NO. A503395
2 | DEPT. NO. XV

3

4 |                        DISTRICT COURT

5 |                     CLARK COUNTY, NEVADA

6 |                          *   *   *

7 | TERESA BAHENA, ET AL,       )
                                )
8 |           Plaintiffs,       )
                                )
9 |      vs.                    )   REPORTER'S TRANSCRIPT
                                )           OF
10|                             )   MOTIONS IN LIMINE
    GOODYEAR TIRE AND RUBBER    )
11| COMPANY,                    )
                                )
12|           Defendant.        )
   _____)
13

14
                 BEFORE THE HONORABLE SALLY LOEHRER
15                     DISTRICT COURT JUDGE

16

17                  TUESDAY, JANUARY 23, 2007
                            9:00 A.M.
18

19| APPEARANCES:

20|     For the Plaintiff:      CHAD BOWERS, ESQ.
                                MATTHEW CALLISTER, ESQ.
21|
        For the Defendant:      ANTHONY LATIOLAIT, ESQ.
22|                             JEFFREY CASTO, ESQ.
                                DANIEL POLSENBERG, ESQ.
23

24

25| Reported by: Mary Beth Cook, CCR #268, RPR
```

MARY BETH COOK, CCR 268, RPR

1-23-07  A503395                    34

1  regarding an alleged postsale duty to recall. I
2  presume this gets into your expert's testimony.
3           MR. BOWERS: It does in part. If they
4  just want to prohibit the use of the word
5  "recall," that's fine.
6           THE COURT: Well, it was never a recall.
7  It was a limited product replacement program and
8  that's the term you should use. You should use
9  limited product replacement program. You shall
10 not use the word "recall" or in essence a recall
11 because recalls can only be done by government
12 order; is that correct? Is that what I'm
13 understanding?
14          MR. LATIOLAIT: Yes, your Honor.
15          THE COURT: I thought the manufacturer
16 issued recalls. I thought read about it in the
17 newspaper all the time that a manufacturer issued
18 a recall. Broccoli that's bad or the spinach
19 that's bad.
20          MR. LATIOLAIT: In terms of tires, your
21 Honor, any recall has to be approved by NHTSA, so
22 it actually does go through the agency before.
23          THE COURT: Isn't it the manufacturer
24 that requests it?
25          MR. LATIOLAIT: In some instances.

1-23-07  A503395                    35

1           THE COURT: On all my Ford products I
2  get my recall notices from Ford and it doesn't say
3  the government has issued a recall. It says Ford
4  has issued a recall. Bring your machine in and
5  they'll replace this or that or the next thing for
6  free.
7           MR. LATIOLAIT: Ford would have to
8  propose it to the agency first. The agency would
9  have to approve it before the consumer is
10 notified.
11          THE COURT: But still it's done by the
12 manufacturer.
13          MR. LATIOLAIT: The initiation of many
14 recalls is done by the manufacturer.
15          THE COURT: All right, thank you. But
16 it will be called a limited product replacement
17 program.
18          Number seven, Goodyear's motion to
19 exclude testimony of plaintiff's expert Allan J.
20 Kam. That's denied. He can testify in the
21 punitive damages trial as we've indicated, but he
22 won't get into anything other than that he worked
23 for the attorney generals on Firestone recall.
24          MR. BOWERS: I'm sorry, your Honor.
25 You're confusing Mr. Kam with Mr. Carlson.

1-23-07  A503395                    36

1           THE COURT: He's the tire lawyer. Oh,
2  okay, you know what? Nevada has a real broad
3  definition of an expert, and a guy who puts down
4  concrete can be an expert because most of the
5  jurors don't lay concrete, and he can be an
6  uneducated whatever, but if he knows how you put
7  the frame up and put the steel in and flatten the
8  concrete, he's an expert.
9           You think that this is going to invade
10 the province of the jury? Do you think anybody
11 sitting over there in that box is going to have
12 any understanding of what these rules and
13 regulations are, government rules and regulations?
14 If you don't come from Philadelphia and have 14
15 letters behind your name, I guarantee none of us
16 understands that stuff. We do absolutely need
17 experts to testify and to tell us about what
18 regulations are and what they mean and how -- we
19 might read it as A, B, C and D, but then you've
20 got the whole code of federal regulations that
21 interprets it E, F, X and Y. So I think it's
22 absolutely essential to have an expert on
23 regulations.
24          Mr. Casto.
25          MR. CASTO: Thank you. What Mr. Kam is

1-23-07  A503395                    37

1  offering is legal conclusions about those
2  regulations. Number two, those regulations don't
3  apply in this case because only NHTSA has
4  authority to order a recall in this case, and
5  there's no private cause of action by an
6  individual concerning the failure to recall a
7  product, or my understanding there's no ability
8  under Nevada law for a postsale duty to warn.
9           THE COURT: But isn't this all part of
10 the punitive damages deal as to how these are
11 studied and how it happens? And it's good for
12 your side that it was never recalled.
13          MR. CASTO: It isn't good for our side
14 in terms of this analysis because what Mr. Kam
15 does -- first of all, the preliminary evaluation
16 that NHTSA undertook occurred after Mr. Kam had
17 left the agency. Mr. Kam was not involved in this
18 preliminary evaluation. We are not permitted to
19 inquire from Mr. Kam how the protocol that he
20 utilized when he was at NHTSA would compare with
21 what is done here because he's precluded from law
22 from testifying about that.
23          THE COURT: But the end result is is
24 that NHTSA never recalled your tire.
25          MR. CASTO: We don't need an expert to

1  tell us that. It's a fact.
2         THE COURT: He can testify to it.
3         MR. CASTO: The fact that NHTSA didn't
4  recall the tire is a fact, your Honor. What
5  Mr. Kam is going to say is that NHTSA should have
6  recalled the tire.
7         THE COURT: That's his opinion. That's
8  what experts testify about is their opinions.
9         MR. CASTO: That's a legal conclusion.
10        MR. BOWERS: Your Honor, if I may --
11        THE COURT: I'm not sure about that.
12 That's just his opinion, and experts are not
13 precluded from giving their opinion on matters
14 that are in controversy.
15        MR. CASTO: First of all, Mr. Kam is
16 going to talk about what the duty is of a
17 manufacturer under the safety act in terms of
18 recalling a product. In this particular case
19 Goodyear undertook the voluntary replacement
20 program which you called the limited product
21 replacement program. That's already happened.
22 That's a fact in terms of what's occurred in the
23 case with respect to Goodyear.
24        Mr. Kam is not an engineer. Mr. Kam
25 hasn't evaluated the tire in this case. We've got

1  Mr. Carlson who is the expert saying that this
2  tire failed because of a manufacturing defect
3  because of adhesion between two components. That
4  individual instance of that tire has nothing to do
5  with an overarcing issue concerning all Load Range
6  E tires that would give rise to a duty to recall
7  that Mr. Kam is going to articulate.
8         Mr. Kam essentially is going to
9  speculate about what NHTSA would have done or
10 should have done, and what we have here, in fact,
11 NHTSA actually did evaluate this. All the
12 documents that Mr. Kam reviewed were provided to
13 NHTSA by Goodyear. Goodyear had, in fact,
14 concluded its investigation of Load Range E tires
15 before NHTSA even began its evaluation of Load
16 Range E tires. And so what Mr. Kam is going to do
17 is say something that's totally irrelevant. What
18 he's going to do is take these individual
19 documents and basically give a four-hour closing
20 argument to the jury by interpreting for the jury
21 documents which the jury itself is completely
22 capable of reading on its own.
23        THE COURT: Oh, I doubt that.
24        MR. CASTO: Mr. Kam's not an engineer,
25 neither is the jury.

1         THE COURT: But he's an expert in
2  regulations and the jury certainly isn't.
3         MR. CASTO: Regulations may be one part
4  of that, your Honor, but in terms of the
5  individual documents, he's going to now interpret
6  the documents and say how they apply to a
7  regulation when he lacks the predicate
8  understanding, because NHTSA would undertake the
9  evaluation in concert with engineers, and Mr. Kam
10 is not an engineer.
11        THE COURT: Mr. Bowers.
12        MR. BOWERS: Your Honor, this is what
13 Goodyear wants to say. Tire was never recalled so
14 there's no obligation, everything was fine. NHTSA
15 never made us recall the tire. In fact, it's
16 documented at length in Mr. Kam's testimony and at
17 length in Goodyear's own correspondence and the
18 testimony of some of the depositions you've
19 approved what happens is NHTSA said we have
20 concerns about this problem but this tire is at
21 the end of its life expectancy, taking this
22 investigation to the next level and going through
23 a formal recall is a very tedious process.
24 Goodyear says we will enter into this limited
25 product replacement campaign in lieu of a formal

1  recall and we can all go our separate ways. That
2  would be great if NHTSA employees were allowed to
3  testify about what had happened. We could call
4  them. There's federal regulations that prevent
5  that from happening.
6         Mr. Casto just gave a wonderful version
7  of Goodyear's events of what happened in this
8  case. We are entitled to our version of events of
9  what happened in this case. Unfortunately not
10 being employees of Goodyear or able to have access
11 to current employees of NHTSA, the only thing we
12 can do is call somebody who's an expert in how
13 NHTSA works, how regulations apply to
14 manufacturers' documents and what happened. I
15 think the Court is absolutely right; the jury can
16 have that assistance both from people that come
17 from Goodyear to give their side of the story and
18 Mr. Kam give his side of the story and accept or
19 reject it.
20        THE COURT: You have people who are
21 involved in this that are going to testify in your
22 side.
23        MR. CASTO: That's absolutely my point.
24 What Mr. Bowers is that he's not able to present
25 that evidence. He just told us earlier he's got